UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

DANESSA V. BLAIR, individually and )
on behalf of similarly situated )
individuals, *et al.*, )
)
          Plaintiffs[1], )
)
     v. )        3:14-cv-18-RLY-WGH
)
PROFESSIONAL TRANSPORTATION, )
INC., and RONALD D. ROMAIN, )
individually and as chief executive )
officer of Professional Transportation, )
Inc., )
)
          Defendants. )

**ENTRY ON PLAINTIFFS' MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

This matter is before me, William G. Hussmann, Jr., United States

Magistrate Judge, on Plaintiff Danessa Blair's Motion to Compel Production of

Documents (Filing No. 170) and Chief Judge Young's order of reference. On

January 29, 2015, I denied Blair's motion in part by finding certain requested

documents irrelevant. (Filing No. 187.) I also granted the motion in part by

ordering the Defendants to submit the remaining documents for *in camera*

review. (*Id.*) Having reviewed the documents, and being duly advised, I

**GRANT** the Motion in part and **DENY** it in part.

---

[1] Whereas Judge Young has granted conditional class certification (*see* Filing No. 33), I
use the term "Plaintiffs" throughout this Entry.

## I.    Background

The Plaintiffs here are current and former employees of Defendant Professional Transportation, Inc. (PTI).  As the basis for their suit, the Plaintiffs claim that PTI has paid them less than the minimum wage and denied them overtime pay to which they are entitled under the Fair Labor Standards Act. *See* 29 U.S.C. §§ 206, 207.  The FLSA permits aggrieved employees to recover double damages:  They may pursue their unpaid overtime wages and the difference between their actual receipts and the minimum wage to which they were entitled, and they also may recover an equal sum in the form of liquidated damages.  *See* 29 U.S.C. § 216.

In their Answer, the Defendants claim that PTI has dealt with the Plaintiffs in good faith and on a reasonable belief that it has complied with the FLSA.  (Filing No. 36 at ¶¶ 21–23.)  This is important because the FLSA grants courts discretion to decrease or eliminate statutory liquidated damages awards where they are satisfied that the defendant acted "in good faith and that he had reasonable grounds for believing" he complied with the FLSA.  *See* 29 U.S.C. § 260.

By their Motion, the Plaintiffs ask the Court to compel the Defendants to produce communications involving the Crew Hauler's Trade Association (CHTA).  Specifically, they seek 97 e-mails the Defendants have withheld as privileged and unedited copies of documents the Defendants have produced in redacted form.  These documents have been identified at Entries 60–157 of the

Defendants' privilege log.  (*See* Filing No. 170 at ECF p. 2 n.2; Filing No. 175-1.)

The parties describe the CHTA as an association of companies (including PTI) engaged in the business of transporting rail crews to and from train stations throughout the country.  According to the Defendants, the CHTA formed in May of 2008—a period when the FLSA was in flux—for the purpose of "advanc[ing] the common public policy and legislative positions of the Members."  (*See* Filing No. 170-6 at ECF p. 1; Filing No. 175 at ECF pp. 2, 5.)  The documents the Plaintiffs seek were exchanged among the CHTA, its members, and attorney David Coburn.  Presumably, the Plaintiffs seek these documents to undermine the Defendants' good faith defense—that is, to demonstrate that the Defendants monitored developments in the FLSA and therefore knowingly violated the law.

## II.    Legal Standard

A party to litigation is entitled to discover from his adversary "any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  Where federal law decides the case, federal common law also determines the existence and applicability of any evidentiary privilege.  Fed. R. Evid. 501; *see also United States v. BDO Seidman, LLP*, 492 F.3d 806, 814 (7th Cir. 2007).  The party asserting privilege bears the burden of persuading the Court that privilege applies.  *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

## III. Discussion

The Defendants have asserted both relevance and the attorney-client privilege as bases for indiscoverability. I find that some of the Defendants' submissions are irrelevant and that some are privileged. I find that others are relevant but are not privileged and therefore must be produced. And I find that others contain both discoverable and indiscoverable content that must be produced but may be produced in redacted form.

### A. Relevance

To be discoverable, evidence must be "relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). At trial, evidence is relevant if it has "any tendency" to make a material fact more or less probable. Fed. R. Evid. 401. But even inadmissible evidence is discoverable so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The Defendants need not produce Documents 91–93, 96, 111–13, 128–30, 136–43, and 148–49 because they are irrelevant. These documents deal exclusively with administrative matters like billing or scheduling and therefore are not likely to lead the plaintiffs to any evidence that bears on their claims or PTI's defenses.

The remaining documents include content relevant to this litigation.

### B. Attorney-Client Privilege

The attorney-client privilege "protects communications made in confidence by a client and client's employees to an attorney, acting as an

attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (citations omitted). To qualify for the privilege, the Court must find that (1) the client sought legal advice from his attorney in her capacity as an attorney, (2) attorney and client communicated for that purpose, and (3) they communicated confidentially. *Id.* (citing *Evans*, 113 F.3d at 1461 (7th Cir. 1997)).

"The claim of privilege cannot be a blanket claim; it 'must be made and sustained on a question-by-question or document-by-document basis.'" *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (quoting *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)). "Further, because the privilege is in derogation of the search for the truth, it is construed narrowly." *Evans*, 113 F.3d at 1461.

The Defendants concede that, "when an attorney is communicating in the capacity of a lobbyist and not as an attorney, such communications are not privileged." (Filing No. 175 at ECF p. 15 (citing *In re Grand Jury Subpoenas Dated March 9, 2001*, 179 F. Supp. 2d 270, 285 (S.D.N.Y. 2001)).) But the Plaintiffs have not objected to the Defendants' contention that communications made for the purpose of obtaining legal advice are privileged even when the attorney otherwise is engaged in lobbying on the client's behalf. (*See id.* at ECF pp. 15–16.[2]) In other words, legal advice invokes privilege, even if it comes from a lobbyist.

---

[2] Citing *United States v. Ill. Power Co.*, No. 99-cv-0833-MJR, 2003 WL 25593221, at *3 (N.D. Ill. Apr. 24, 2003); *Vacco v. Harrah's Operating Co.*, No. 1:07-CV-0663 (TJM/DEP), 2008 WL 4793719, at *7–8 (N.D.N.Y. Oct. 29, 2008); *In re Brand Name*

### 1. Privileged Documents

Many of the documents the Defendants have withheld or redacted are not privileged because they do not include communications made for the purpose of giving or receiving legal advice. Communication between an attorney and her client is privileged only if the parties are communicating for the purpose of giving or receiving legal advice. *Sandra T.E*, 600 F.3d at 618. Documents 60–61, 64, 72–73, 75, 78–79, 84, 86–88, 90, 104–110, 114–27[3], 131–35, 144–47, 150–55, and 157 deal strictly with lobbying efforts: They either outline a lobbying strategy, solicit information to be used in lobbying, or relay the results of a lobbying effort. Therefore, the Defendants must produce these documents in unredacted form.

### 2. Nonprivileged Documents

The remaining documents (76–77, 80–83, 85, 89, and 100) are protected by the attorney-client privilege. These documents consist of legal advice or information provided for the purpose of receiving legal advice. Further, they appear to be confidential communications: The addressees of these documents appear to include only counsel for the CHTA, representatives of the CHTA's member companies, and counsel for the individual member companies. The Plaintiffs acknowledge that David Coburn—the attorney whose

---

*Prescription Drugs Antitrust Litigation*, No. 94 C 897, MDL No. 997, 1995 WL 557412 (N.D. Ill. Sept. 19, 1995).

[3] I note that Document 127 states the holding of a judicial decision, but it does not present the holding as legal advice. Rather, it presents the holding to give context to a discussion about lobbying strategy.

communications are in question—represented the CHTA. (*See* Filing No. 170 at ¶¶ 12, 19.)  The Plaintiffs also acknowledge that the CHTA was an association of corporations united for the same purpose: advancing their collective legislative and public policy positions.  (*Id.* at ¶¶ 1, 18.)  So there seems to be no argument that these documents were distributed to anyone but attorney or client.

To whatever extent the Plaintiffs argue that these documents exceed the bounds of an attorney-client relationship, I find that privilege applies through the common interest exception.

In federal proceedings, the common interest exception entitles a party to avail itself of an evidentiary privilege even after it has shared a document with a third party.  *BDO Seidman,* 492 F.3d at 814–15.  Generally, a party waives any claim that a document is privileged when she shares it with a third party.  *E.g.,* *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC,* No. 1:04-CV-477, 2007 WL 465444 at *2 (N.D. Ind. Feb. 7 2007).  The common interest exception negates waiver and allows a party to invoke privilege where she has shared a document only in confidence and for the purpose of advancing a shared legal interest.  *BDO Seidman,* 492 F.3d at 815–16.

The exception recognizes that parties with common objectives often benefit by working together and that those benefits can be secured only if the parties' collective communications are afforded the same protection as their communications with their individual attorneys.  *See, e.g.,* *id.* at 816; *United States v. Schwimmer,* 892 F.2d 237, 243–44 (2d Cir. 1989); *United States v.*

*McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979).  It also acknowledges that the public benefits from greater conformity to the law and less frequent litigation when parties can pool their efforts and resources to ensure compliance.  *See BDO Seidman*, 492 F.3d at 816.

A party asserting the common interest exception therefore must articulate a qualifying legal interest shared by each party to the communication.  The shared interest must be a *legal* interest.  *E.g., BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 224 F.R.D. 438, 442 (S.D. Ind. 2004).  An entirely commercial or financial interest does not qualify.  *Id.*  But, litigation need not be initiated or even anticipated for an entity to hold a qualifying legal interest.  *BDO Seidman*, 492 F.3d at 816.  Indeed, the Seventh Circuit has recognized that complying with the law and avoiding litigation are valid legal interests.  *Id.*

Simply identifying a legal interest does not entitle a litigant to the protections of the common interest exception.  She must demonstrate that each party's interest is identical.  *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 327 (N.D. Ill. 2008); *Draus v. Healthtrust, Inc.—The Hosp. Co.*, 172 F.R.D. 384, 391 (S.D. Ind. 1997) (citing *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974)).  She also must demonstrate that the parties cooperated to advance their identical legal interest and that the document requested was shared in confidence and for the purpose of advancing their joint interest.  *BDO Seidman*, 492 F.3d at 815–16; *Schwimmer*, 892 F.2d at 244.  Finally, because the common interest doctrine is

an exception to the basic rule of waiver and not a freestanding privilege, the requestee also must show that the document was protected by another privilege *before* she shared it with the commonly interested parties. *Grochocinski*, 251 F.F.D. at 327; *Bitler*, 2007 WL 465444, at \*3.

The documents I have identified as privileged qualify for protection under the common interest exception. Again, the Plaintiffs acknowledge that David Coburn represented the CHTA and that the CHTA was an association of corporations. As I explained above, these communications were made for the solicitation or dissemination of legal advice, and they were shared only between Coburn, the CHTA's members, and their individual attorneys.

The remaining question, then, is whether the CHTA's member institutions shared a common legal interest, and I find that they did. Advancing their legislative positions was *a* common interest, but it was not their *only* common interest. The communications between Coburn and the CHTA's personnel indicates that they shared common *legal* interests, including:

- understanding their liabilities and obligations under proposed changes to the law (Documents 74, 76, 77, 80, 89, 99, 100, 103);

- understanding and complying with the law as it stood (Documents 80–83, 85, 103); and

- complying with the law in forming the corporation and conducting their lobbying efforts (Documents 62, 99, 100).

Each of the documents that I find would be privileged or redactable relates to one of those interests. Therefore, the common interest exception resolves any threat to these documents' protection.

## C. Redactable Documents

The Defendants have withheld many documents in which only segments of the communications relate to the dissemination or receipt of legal advice. The Defendants must produce the following documents but may redact privileged communications as follows:

- Document 62: The Defendants may redact:

  - all but the first two sentences of the first full paragraph on page 3; and

  - the final paragraph on page 3.

- Document 74: The Defendants may redact the second paragraph on page 1.

- Document 99: The Defendants may redact:

  - the first two bulleted paragraphs and the final paragraph of Bob Tevault's e-mail on page 1;

  - the entirety of David Coburn's e-mail beginning on page 1 and ending on page 2;

  - the five bulleted paragraphs in Bob Tevault's e-mail on page 2; and

  - the remainder of the document beginning with David Coburn's e-mail on page 3.

- Document 103: The Defendants may redact:

  - the first sentence of the first full paragraph beginning on page 2;

  - the entirety of the second full paragraph beginning on page 2; and

- o the remainder of the document beginning with David
  Coburn's June 14 e-mail beginning on page 2.

For the reasons I explained above, these redactable portions would be subject to the common interest exception.

### D. Documents with Multiple Messages

As a final point of clarification, I note that most of the Defendants' submissions include chains of several e-mails. Where a document includes only "new" material (material not presented in an earlier document), my analysis applies to the entire document unless I have specified otherwise.[4] Where a document contains both "new" and "old" material (material reproduced from an earlier document), my analysis applies only to the "new" material unless I have specified otherwise. To the extent any content I have deemed irrelevant or privileged reappears in a subsequent document, the Defendants may redact that content from reappearances.[5]

## IV. Conclusion

I **DENY** the Plaintiffs' Motion in that I find that the documents identified in the Defendants' privilege log as Documents 91–93, 96, 111–13, 128–30, 136–43, and 148–49 are irrelevant and need not be produced. I further **DENY**

---

[4] For example, Document 61 includes two e-mails, neither of which appeared in Document 60. Therefore, my instruction to produce Document 61 applies to both e-mails.

[5] For example, Document 84 includes a "new" e-mail (Fln Neve's message sent June 11 at 5:07 P.M.) but also reproduces several other messages—including Documents 77 and 80–82, which I have deemed privileged. My finding that Document 84 is relevant but not privileged applies to the first e-mail. The Defendants must produce that message in its entirety but may redact the reproduction of Documents 77 and 80–82 consistent with my instructions.

the Plaintiffs' Motion in that I find that Documents 76–77, 80–83, 85, 89, and 100 are protected by the attorney-client privilege and need not be produced.

I **GRANT** the Plaintiffs' Motion in that I compel the Defendants to produce Documents 60–61, 64, 72–73, 75, 78–79, 84, 86–88, 90, 104–110, 114–27, 131–35, 144–47, and 150–57, which are relevant but not protected by privilege.[6] I further **GRANT** the Plaintiffs' Motion in that I compel the Defendants to produce Documents 62, 74, 99, and 103, but I authorize the Defendants to redact those documents consistent with this Entry.

The Defendants will serve the required documents within 15 days of this Entry.

**SO ORDERED** this 9th day of March, 2015.

WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Served electronically on all ECF-registered counsel of record.**

---

[6] Remembering, of course, that the Defendants may redact the portions of these documents containing privileged segments of Documents 62, 74, 76–77, 80–83, 85, 89, 99–100, and 103.